# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ELIZABETH LOUISE ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 4:14-cv-00208-JEO |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Elizabeth Louise Robinson brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") finding that she is not disabled under the Social Security Act. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. The parties have consented to the jurisdiction of this court for disposition of this matter. (Doc. 9). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

The plaintiff filed for disability insurance benefits on December 22, 2010. (R. 64, 146-49). The application initially was denied by the State Agency. The plaintiff requested a hearing before

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

1

an Administrative Law Judge ("ALJ"). (R. 72-73). The plaintiff, her counsel and a vocational expert ("VE") attended the hearing on July 16, 2012. (R. 40-62). The ALJ issued a decision on August 30, 2012, finding that the plaintiff was not entitled to benefits. (R. 24-33).

The Appeals Council denied Robinson's request for review on December 5, 2013. (R. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. The plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2]  The Regulations define being "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)  Is the claimant presently unemployed;

(2)  Is the claimant's impairment severe;

(3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the "Listings"];

(4)  Is the claimant unable to perform his or her former occupation;

(5)  Is the claimant unable to perform any other work within the economy?

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). An affirmative answer to any of the above questions leads either to the next question or, at steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *Id.; see* 20 C.F.R. §§ 404.1520 and 416.920.

## IV. FINDINGS OF THE ALJ

The plaintiff was 58 years old at the time of the ALJ's decision. (R. 176). She has past relevant work experience as a cashier, receptionist, and stocker. (R. 57-58). She alleges she has been unable to work since April 27, 2010, due to a back injury, arthritis, balance issues, and bad knees. (R. 217; Doc. 11 at 2). Following a hearing, the ALJ determined that the plaintiff was not disabled. (R. 33). She found that the plaintiff had severe impairments of degenerative joint disease of the lumbosacral spine, and obesity. (R. 22). The ALJ further found that the plaintiff "also has a history of a degenerative condition of the right knee that existed on the alleged onset date, [which] was aggravated by a July 2011 fall, and required total arthroplasty. The condition was no longer severe after February 2012." (*Id.*) The ALJ further found that the plaintiff had the residual functional capacity ("RFC") to perform light work with limitations. (R. 24). Finally, the ALJ determined, premised on the testimony of the VE, that the plaintiff could perform her past work as a cashier. (R. 32).

## V. DISCUSSION

The plaintiff claims that the decision of the ALJ is due to be reversed and benefits awarded to her or the decision is due to be remanded for "further proper consideration" because the ALJ "failed to properly consider [the] plaintiff's pain pursuant to the Eleventh Circuit's three part pain standard." (Doc. 10 at 5). The Commissioner argues that the contention is without merit and that

4

the decision of the ALJ is supported by substantial evidence. (Doc. 11 4-10).

### A.     The Standard

It is well-settled that the plaintiff bears the burden of proving that she is disabled. *See* 42 U.S.C. § 423(D)(5)(A); 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512(a), (c); 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that she is disabled."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

In evaluating a disability claim involving subjective complaints such as pain, United States District Judge L. Scott Coogler has stated:

> In order to establish a disability on the basis of subjective testimony of pain and other symptoms, the claimant must present evidence to support the Eleventh Circuit's pain standard. Under this standard, a plaintiff must present (1) evidence of an underlying medical condition; and (2) either a) objective medical evidence confirming the severity of the alleged symptoms or b) that the objectively determined medical condition is of such a severity that it can reasonably [be] expected to give rise to the alleged pain. *See* 20 C.F.R. § 404. 1529(a) (2011); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1225 (11th Cir. 1991)). If the claimant establishes an impairment that could reasonably be expected to cause his alleged symptoms, the ALJ is obligated to evaluate the

> claimant's subjective complaints, including intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work. *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ may discredit this type of pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record. *Foote*, 67 F.3d at 1561; *Wilson*, 284 F.3d at 1225.

*Parker ex rel. Parker v. Colvin*, 2013 WL 2635696, *3 (N.D. Ala. June 10, 2013).

### B. Discussion

#### 1. The Plaintiff's View

In support of the plaintiff's contention that she is disabled, counsel points to the plaintiff's medical records evidencing "an ongoing history of treatment for chronic low back pain and bilateral knee pain." (Doc. 10 at 6). These records include (1) an MRI on April 27, 2010, demonstrating a herniated disc, canal stenosis with a broad based disc bulge, severe facet hypertrophic changes, narrowing of the spinal canal and left foraminal stenosis; (2) a diagnosis of chronic low back pain with stenosis, spondylosis, degenerative disc disease, and arthritis of the hips and the knees; (3) epidural steroid injections; (4) severe tenderness over the SI joint with a positive Patrick test;[3] (5) a right total knee arthroplasty in November 2011; and (6) a consultative examination by Dr. Jariwala that noted pain in both hips, mid-back, lower back, and right knee that was getting worse. (*Id*. at 7 (citing R. 314-23, 327)). Counsel concludes that the plaintiff "should have been found disabled based upon her pain alone pursuant to SSR 96-7[4] and the Eleventh Circuit's three part pain

---

[3] Patrick's test is "[a] test in which the joint is stressed, used to determine the presence of sacroiliac disease." The Free Medical Dictionary, http://medical-dictionary.thefreedictionary.com./Patrick%27+ test (last visited March 3, 2015).

[4] SSR 96-7 provides:

PURPOSE: The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the

standard." (*Id.*) Alternatively, counsel asserts that the plaintiff "should be limited to a sedentary level of physical exertion due to severe back pain with documented canal stenosis, and history of right knee arthroplasty." (*Id*. at 7-8). The Commissioner retorts that the medical records "do not indicate [the p]laintiff's alleged pain and other symptoms were as limiting as she claim[s]." (Doc.

---

individual's statements in the disability determination or decision. [FN1]  In particular, this Ruling emphasizes that:

1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186 (July 2, 1996).

11 at 7).

The plaintiff initially claimed in her early filings that she was disabled as of September 1, 2008, about the time she quit working. (R. 146, 161, 176). At her disability hearing, however, the plaintiff amended her onset date until 2010. Upon inquiry by the ALJ, the plaintiff "admitted that she stopped working because the store where she was employed closed. She admitted that she worked until 2008 when the store she was working in closed, but added that she had just undergone ankle surgery." (R. 25, 44). Upon inquiry as to why she did not return to work, the plaintiff stated that it was because her husband was deployed to Iraq. (*Id*.)

The plaintiff stated at the disability hearing that her back pain began in 2008. (R. 25, 44). She treats the pain with heat, ice, and injections in her spine with little relief. (R.25). She stated that she can sit and stand for only five or ten minutes at a time, that she has to lie down three to four hours a day, and that "her back pain is a level seven with medication, and the pain keeps her from sleeping at night." (R. 25). She further stated that her back pain has worsened and sometimes prevents her from doing household chores and the pain makes driving difficult. (*Id*.) She stated that her medications did not work. Her daily activities consist of reading the news on the computer, reading emails, walking and caring for her dog, doing laundry, mopping, lying down, and pulling weeds. (R. 26).

    **2.**  **Medical Records**

Medical records from Dr. Rebecca W. Miller, at the UAB Health Center in Moody, show that during a follow-up visit concerning her medications on October 3, 2008, the plaintiff stated that her main complaint was low back pain. She complained that she "cannot sit or stand up for any lengthy period of time. She is up-and-down all night. [The pain] radiates up her spine and down her legs."

(R. 294). Her examination revealed "no swelling in her elbows, knees, wrists, or ankles.... No numbness or weakness and no foot drop." (*Id*.) Over the next two years, her medical records show she primarily was treated for back and hip pain, bronchitis and wheezing related to her tobacco abuse, congestion, hypertension, and high cholesterol. (R. 294-310). The plaintiff failed to follow her doctor's instructions to quit smoking and to participate in an EKG. (R. 295, 304).

With regard to her back, Dr. Miller noted that the plaintiff could "rise from a sitting-to-standing position without assistance, but cannot get comfortable. [She f]requently sits and walks through the patient interview." (R. 294). Her MRI shows "diffuse asymmetric disc bulging." (R. 296). She was a candidate for pain management injections in November 2008, but she declined to have them. (R. 297). She was placed on Relafen and continued on Lortab as needed. (*Id*.) On April 16, 2009, her back pain was reported as being stable on medication. (R. 301). She complained of knee swelling and back pain when she walked throughout the day and when she was more active. (*Id*.) In her October 16, 2009 visit she indicated she had increased her consumption of Lortab. (R. 303). She was counseled against this and placed under a narcotics contract and screening. (*Id*.) She was continued on Relafen. Dr. Miller noted that the plaintiff did not display any limitation in moving her extremities. (*Id*.) She also was able to easily rise from a sitting to standing position without assistance. (*Id*.) Her hip strength was described as "[f]ive out of five" and she moved all extremities well. (*Id*.)

Dr. Miller continued to treat the plaintiff during 2010. In February, she noted the plaintiff's "longstanding pain in her lower back, bilateral hips, which ha[s] gotten worse." (R. 305). The pain now was also radiating into the back of her right knee. (*Id*.) The plaintiff's Welbutrin prescription appeared to help. She was not, however, taking her Relafen prescription, opting instead for over-the-

9

counter medications. (*Id*.) It was also noted that the plaintiff had more difficulty moving from the sitting to standing position without assistance. (R. 306). Dr. Miller ordered x-rays. (*Id*.)

The back x-rays demonstrated lumbar degeneration. (R. 307). The plaintiff's extremities had good range of motion and strength in her April 2010 visit. (*Id*.) Dr. Miller ordered an MRI. The April 27, 2010 MRI revealed L2-3 herniation impingement, minimal stenosis at L3-4 with disc bulge and moderate facet hypertrophy severe facet change with spinal canal narrowing and stenosis at L4-5, and facet change with disc protrusion at L5-S1. (R. 321).

Following the MRI, the plaintiff saw Dr. Jason L. McKeown for pain management. In her first visit, Dr. McKeown noted she was suffering from "[c]hronic back pain with lumbar spinal stenosis, multilevel spondylosis and degenerative disc disease." (R. 322). In her June 2, 2010, assessment, Dr. McKeown noted the plaintiff complained of knee and hip pain, her pain level was reported at "three," and she had good motor strength in her lower extremities. She was diagnosed with lumbar spinal stenosis, multilevel spondylosis, and degnerative disc disease; osteoarthritis of the hips and knees; and chronic tobacco abuse. (R. 322-23). She was counseled on smoking cessation and the need for a lifestyle change, including diet modification and exercise. Finally, she was told she needed to lose weight. (*Id*.) Steroid injections were recommended. She was interested, but needed to arrange transportation to get to and from the procedure. (*Id*.)

The plaintiff was seen by Dr. Miller on October 12, 2010. She was diagnosed with hypertension, back pain, and swelling in one knee. She was still smoking two packs of cigarettes per day. She stated she had no intention of quitting. She was able to stand without assistance, walked with a painful gait and right side limp. During this visit, her right knee was injected in an effort to assist her in walking. The plaintiff also informed Dr. Miller that she was "amenable to a

back block and would like to proceed with [it]." (R. 309).

The plaintiff was seen at the UAB pain clinic on December 10, 2010, by Dr. Keller for sacroiliac joint and lumbar epidural steroid injections. Her physical examination revealed good motor strength, moderate to severe tenderness over the S1 joint, minimal tenderness to palpation over the right lumbar facet joints, a positive Patrick test on her right side, a negative straight leg raise and intact sensation of all extremities. She was diagnosed with sacroiliac joint arthropathy, lumbar spinal stenosis, multilevel lumbar spondylosis, and degenerative disc disease. She was given "a right-sided Sl injection" and "a lumbar epidural steroid injection targeting the left-sided upper lumbar and lower thoracic pain." (R. 318). This resulted in a decrease in her pain level from three to two on a ten-point scale. (R. 119).

The plaintiff next was examined by Dr. Hasmukh Jariwala on March 18, 2011. She complained of pain in her hips, mid-back, lower back, and right knee over the last six years. She complained the pain was getting worse. She indicated that her medication was "helping fifty percent." (R. 325). Her physical examination revealed no swelling and a normal range of motion in her extremities, normal gait, intact motor and sensory systems, intact reflexes, and no evidence of any muscle spasms. (R. 327).

The plaintiff returned to the UAB clinic on July 18, 2011, complaining of knee pain resulting from her tripping in a hole a few weeks earlier. She was sent for an MRI of the right knee. (R. 397-98). The MRI revealed a need for knee surgery due to degenerative arthritis. She had a total right knee arthroplasty on November 15, 2011. She received home health therapy for two months. Her knee was x-rayed on December 23, 2011. The results were good. She was continued on exercise and Lortab for her pain. Her next visit was schedule to be in two months. (R. 360). During her

February 23, 2012 visit, she was placed on full weight bearing with a continuation of her exercise program. She was scheduled for a recheck in six months. (R. 359).

On May 8, 2012, the plaintiff returned to Dr. Miller complaining of sharp bilateral pain in her hips. (R. 407). She also complained of lower back pain on her right side. She was diagnosed with chronic obstructive pulmonary disease, osteoarthritis, Vitamin D deficiency, low back pain, hypertension, and bilateral hip pain. (R. 409).

### 3. Analysis

The ALJ examined all of the evidence and found that the plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms "are not credible to the extent they are inconsistent with [her] ... residual functional capacity assessment." (R. 31). The ALJ further stated that while the plaintiff's medical "records do support a severe impairment of degenerative joint disease of the lumbosacral spine," they "do not support the alleged level of pain." (*Id.*)

In reaching these determinations, the ALJ found that the plaintiff's medical examinations generally reveal a normal range of motion, normal strength, moderate or no tenderness or swelling, and an ability to rise from sitting to standing without assistance. (R. 27-31, 315, 318, 321-22, 327, 399, 406, 409). The records also reveal that on June 2, 2010, the plaintiff reported complete functioning and that "she worked on building her deck" earlier in the day. (R. 321). She also stated that she just "grins and bear[s]" the pain. (*Id.*) The plaintiff has also managed her pain with medications and limited injective therapy.

To the extent the plaintiff relies on her MRI on April 27, 2010, demonstrating a herniated disc, canal stenosis with a broad based disc bulge, severe facet hypertrophic changes, narrowing of the spinal canal and left foraminal stenosis, that is not the end of the analysis. As noted by the ALJ

and just cited above, on June 2, 2010, shortly after the MRI was performed, Dr. McKeown's clinical assessment found that the plaintiff's pain level was three out of ten, she was dealing with the pain, and she was completely functioning as evidenced by the fact that she had been quite active earlier that very day. (R. 321). He also noted that she only had "trigger point tenderness" in her sacral area. (R. 322). The MRI is evidence of her condition, but the plaintiff's statements and activities are equally demonstrative of her abilities. The ALJ's finding that the plaintiff's allegations were not entirely credible and that she could perform a reduced range of light work is supported by the record.

Next, the plaintiff cites to her diagnosis of chronic low back pain with stenosis, spondylosis, degenerative disc disease, and arthritis of the hips and the knees. With regard to these diagnoses, the ALJ noted the following concerning her pain after her epidural injections:

> Her pre-procedure pain level was a three and post-procedure pain level was a two. Neither pain level is significant given that it is rated on a scale of 1 to 10 with 10 being the worst. She returned on January 21, 2011, and reported 85% pain relief for 12 days. She presented for her second set of injections with no change in examination or diagnoses. She related a level three pain pre-procedure and a level one post-procedure....

(R. 322). While the diagnosis is important, the plaintiff's responsiveness to treatment and her ability to adapt and deal with pain is also significant and was properly noted by the ALJ.

Third, the plaintiff cites to her epidural steroid injections. While the need for such shots is significant, as just noted, the plaintiff favorably responded to the shots.

Fourth, the plaintiff cites to her moderate to severe tenderness over the SI joint with a positive Patrick test. While her reference to the record is accurate, it does not set forth the entire situation. This assessment was before she had the epidural. Additionally, she reported a pre-procedure pain level of only three out of ten. Her post-procedure pain level was reported as two out of ten. (R. 319). These additional facts support the ALJ's conclusion that the plaintiff's complaints

concerning her pain were not to be fully credited.

Fifth, the plaintiff notes that she had a right total knee arthroplasty in November 2011. While this is factually correct, it does not support a conclusion that she is disabled premised upon pain. To the contrary, the record shows that her recovery from the surgery was good. The subsequent x-rays in December 2011 show "good" recovery. (R. 360). She was continued on her exercise program, given Lortab for pain, and told to return in two months. (*Id*.) Two months later, on February 23, 2011, her x-rays again were "good." (R. 359). She was continued on her exercise program, placed on "[f]ull weightbearing," and scheduled to return in six months. (*Id*.) Nothing in the assessments demonstrates that as a result of the surgery she was disabled, in significant pain, or restricted beyond the RFC finding of the ALJ. In her last visit with Dr. Miller on May 8, 2012, the plaintiff made no reference to any pain emanating from her knee or as a residual consequence of the surgery. (R. 404-07). What is noteworthy is that she continued to smoke despite doctor warnings and she refused physical therapy and any further blocks for her back. (R. 409).

Lastly, the plaintiff cites to the consultative examination by Dr. Jariwala that noted that she experienced pain in both hips, mid-back, lower back, and right knee that was getting worse and that she had limited range of motion in the back and knees and a positive straight leg raise. (Doc. 10 (citing R.325, 327)). The ALJ closely evaluated Dr. Jariwala's examination, stating as follows:

> Hasmukh Jariwala, M.D., examined the claimant consultatively on March 18, 2011. She complained of pain in her hips, back, and right knee, and hypertension. She reported her medications help 50 percent and reported controlled hypertension. She reported smoking two packs of cigarettes daily and last working in 2008. Examination revealed no swelling and normal range of motion of all extremities, normal gait, intact motor and sensory systems, intact reflexes, and no evidence of any muscle spasm. He found her able to walk on heels but to have difficulty walking on toes, able to squat and arise with assistance, no focal neurological deficits, and 5/5 strength of major muscle groups including handgrip. Dr. Jariwala assessed the claimant with a minimal to mild impairment of the right knee and mild impairment

14

> of the lumbosacral spine.... These signs do not support a finding of disabling pain. They show the claimant is able to use her hands adequately.

(R. 29). In view of this consideration and assessment by the ALJ, the plaintiff's conclusory citation to the determinations of Dr. Jariwala is unimpressive. This information, individually or collectively, does not support a conclusion that the plaintiff was disabled. This is particularly true since the evaluation preceded her total right knee replacement and her January 20, 2012 and May 8, 2002 visits with Dr. Miller, during which it was noted that she "walked with a normal gait and had no clubbing, cyanosis, or edema of the extremities...," and she revealed "normal range of motion, normal strength, no tenderness or swelling, normal gait, and [an] ability to rise from sitting to standing without assistance...," respectively. (R. 31, 404-09).

To the extent the plaintiff asserts that the ALJ did not properly consider her pain under the Eleventh Circuit pain standard (doc. 10 at 5-10), the court disagrees. As noted above, the ALJ is required to examine the evidence of any underlying medical condition and if the plaintiff establishes an impairment that could reasonably be expected to cause her alleged symptoms, the ALJ is obligated to evaluate the plaintiff's subjective complaints, including intensity and persistence of the alleged symptoms and their effect on the plaintiff's ability to work. *Parker ex rel. Parker*, 2013 WL 2635696, *3. Thereafter, the ALJ may discredit this type of pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record. *Id.* (citing *Foote*, 67 F.3d at 1561; *Wilson*, 284 F.3d at 1225).

The ALJ cited the applicable authorities, considered the plaintiff's allegations in relation to the evidence in the record, and articulated detailed reasons and analysis for determining that the plaintiff's claims were not totally credible. The plaintiff has failed to show how the ALJ legally or factually misapplied applicable Eleventh Circuit precedent.

In sum, substantial evidence supports the determination of the ALJ that the plaintiff was not under a disability as defined by the Social Security Act.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

**DONE,** this the 10th day of March, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge